UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD D. LAURAIN, II

          Case No. No. 17-13462

      Plaintiff,

          District Judge Nancy G. Edmunds

v.

          Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Gerald D. Laurain, II ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act. The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Plaintiff's Motion for Summary Judgment be GRANTED [Docket #16] to the extent that the case is remanded for further proceedings consistent with this Report, and that Defendant's Motion for Summary Judgment be DENIED [Docket #17].

-1-

## I.  PROCEDURAL HISTORY

On April 4, 2014, Plaintiff filed applications for DIB and SSI, alleging disability as of March 31, 2003 (Tr. 79, 284).  Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on May 11, 2016 (Tr. 94).  Administrative Law Judge ("ALJ") Theresa Tobin presided.  Plaintiff, represented by attorney Rita Shoka, testified, as did Vocational Expert ("VE") Don K. Harrison (Tr. 98-124, 126-132).  On July 11, 2016, ALJ Tobin determined that Plaintiff was capable of a significant range of unskilled, exertionally light work (Tr. 79-88).  On January 23, 2017, the Appeals Council declined to review the administrative decision (Tr. 1-3).  Plaintiff filed suit in this Court on October 24, 2017.

## II.  BACKGROUND FACTS

Plaintiff, born November 2, 1974, was 42 at the time of the administrative decision (Tr. 88, 284).  He received a GED and worked previously as a busser, cleaner, and restaurant deliverer (Tr. 313-314).  He alleges disability as a result of  body pain, shortness of breath, memory problems, extremity swelling, head injuries, liver disease, numbness of the lower extremities, and balance problems (Tr. 312).

### A.  Plaintiff's Testimony

Plaintiff offered the following testimony:

He worked previously baking cookies and running a cash register (Tr. 99).  He had been told by his doctor that he had no cartilage between the bones of his left knee (Tr. 100).  His hands hurt and tingled constantly (Tr. 100).  Despite the use of a wrist brace, he

experienced problems gripping (Tr. 100-101).  He used a cane whenever walking due to ankle instability (Tr. 101).  He experienced migraine headaches but was unable to afford a full dosage of the medication that relieved the condition (Tr. 102).  As a result of the knee problems, he experienced weak ankles (Tr. 103).  He stood 5'10" and weighed around 220 pounds, noting that he had experienced a recent weight gain since recovering from a long-term virus (Tr. 104-105).  He had never held a driver's license (Tr. 106).  He used public transportation, but experienced difficulty climbing and descending the steps of the bus (Tr. 106-107).

Plaintiff lived with his mother and did all of the household cleaning and grocery shopping (Tr. 108).  He walked to a grocery store one block from his house (Tr. 108).  He was able to read and write (Tr. 109).  He spent his time listening to a battery operated radio since the utilities at his house had been cut off (Tr. 110).  He previously experienced drinking problems but now sought to avoid situations where others would be using alcohol (Tr. 111).  He was currently receiving substance abuse counseling (Tr. 111).  He did not use illicit drugs but smoked around a half pack of cigarettes a day (Tr. 112).  He experienced the medication side effect of drowsiness and "a little" blurred vision (Tr. 113).  He had recently undergone EMG studies of the lower extremities but had not received the results (Tr. 113).

Due to knee pain, Plaintiff was unable to walk significant distances or stand more than a few minutes (Tr. 113-114).  He was able to sit for longer periods (Tr. 114).  He was able to lift a maximum of between eight or seventeen pounds (Tr. 115).  He experienced difficulty

bending and climbing stairs and was wholly unable to squat or crawl (Tr. 115-117). He experienced tendinitis in all fingers (Tr. 116). He had a "horrible" short-term memory (Tr. 116). Plaintiff was able to dress, prepare simple meals, and care for other personal needs without help (Tr. 117).

In response to questioning by his attorney, Plaintiff testified that his niece usually accompanied him to the grocery store (Tr. 118). He had been diagnosed with depression (Tr. 118). He experienced anxiety due to his physical limitations (Tr. 118). He was unable to use yard tools due to shoulder problems (Tr. 119). He experienced reduced psychological symptoms since taking psychotropic medication (Tr. 120). He reported that between 2003 and 2013, he performed "side jobs" to earn money (Tr. 121). Physical therapy, ice packs, and cortisone shots gave him only temporary relief from left knee pain (Tr. 121). He avoided interacting with friends who used alcohol (Tr. 123).

**B. Medical Records**[1]

### 1. Records Related to Plaintiff's Treatment

In October, 2010, Plaintiff was diagnosed with a closed head injury (Tr. 429). He appeared intoxicated at the time of treatment (Tr. 430). A CT scan of the head was unremarkable (Tr. 433). He received treatment again in October, 2008 after taking a fall while intoxicated (Tr. 439-441). A CT scan of the head was negative (Tr. 454). Plaintiff was

---

[1]Plaintiff's arguments for remand pertain exclusively to his physical conditions. While the medical transcript has been reviewed in full, the present discussion omits mention of his alleged psychological/cognitive limitations.

again treated for intoxication in January, February, June, October, and December, 2009 (Tr. 509, 518, 521, 524, 527, 530). In January, February, April, and May, 2010, Plaintiff received emergency treatment for acute alcohol intoxication (Tr. 399, 416-420, 539, 542).

In July, 2011, Plaintiff reported long-standing hand pain consistent with Carpal Tunnel Syndrome ("CTS") (Tr. 559). In November, 2012, he was treated for a broken nose and jaw following an assault (Tr. 590-595, 669). In January, 2014, Plaintiff sought emergency treatment after falling and injuring his left ankle while intoxicated (Tr. 375, 387, 469, 486, 662, 743). A CT of the head was unremarkable (Tr. 387).

In July, 2014, Plaintiff sought treatment for left knee and ankle pain (Tr. 707). Imaging studies of the bilateral ankles were unremarkable (Tr. 707-708). Imaging studies of the left knee were consistent with mild arthritis and mild narrowing of the medical compartment (Tr. 714). Elie Khoury, M.D. prescribed physical therapy for possible mild tendinitis of the the left Achilles tendon (Tr. 711, 872, 921-922, 927). The July, 2014 records also note a diagnosis of emphysema (Tr. 759). September, 2014 physical therapy records note reduced knee pain (Tr. 732, 737). Therapy observations were consistent with tendinitis of the left ankle (Tr. 926). Modalities included hot and cold treatment, electrical stimulation, ultrasound, and exercise (Tr. 883). In October, 2014 Plaintiff's knee was aspirated (Tr. 1101). A chest x-ray from the following month was consistent with Chronic Obstructive Pulmonary Disease ("COPD") (Tr. 915). In November, 2014, Plaintiff reported knee pain for the past five years (Tr. 1085). In December, 2014, Plaintiff received emergency treatment

after being discovered with his head in a "small bloody puddle" (Tr. 764). Treating records note a full range of motion (Tr. 773).

January, 2015 records by Claudia Jarring-Tejada, M.D. note that a request for an MRI of the knee was disapproved (Tr. 852). The following month, Plaintiff was prescribed wrist braces (Tr. 860). In June, 2015, Plaintiff again sought treatment for acute alcohol intoxication (Tr. 790). July, 2015 imaging studies of the left knee showed "large" joint effusion (Tr. 986, 1168, 1170). July, 2015 records showed decreased Achilles and Patellar reflexes (Tr. 1062). The following month, podiatrist Scott M. Homer, D.P.M. diagnosed Plaintiff with ankle instability, arthralgia, arthritis, peripheral neuropathy, and neuritis, noting that he administered bilateral cortisone injections to the ankles (Tr. 1185). In September, 2015, Plaintiff reported worsening ankle and knee pain with stiffness and swelling (Tr. 1065, 1114, 1117). He was advised to use medication, injections, padding, and strapping to avoid surgical intervention (Tr. 1063-1064). In October, 2015, Plaintiff was referred to a rheumatologist (Tr. 934). He was treating with hot and cold packs and exercise for hand pain (Tr. 939). An EMG of the upper extremities was negative (Tr. 944). In December, 2015, Plaintiff reported that left knee aspiration did not improve the knee pain brought about by an acute meniscal tear of the left knee (Tr. 969-970, 1123-1124). He exhibited left knee edema and tenderness (Tr. 1125).

Dr. Jarring-Tejada's January, 2016 records note Plaintiff's report of chronic hand, knee, and leg pain (Tr. 793). She noted that an October, 2015 MRI of the left knee showed "extensive bone infarcts of the femur" and a tear of the of the meniscus (Tr. 793, 1091, 1176-1177). Imaging studies of the left knee from January, 2016 were consistent with the October, 2015 MRI showing "severe" osteoarthritis of the left knee (Tr. 1181-1183). Plaintiff reported good temporary results from aspiration and injections, but ongoing symptoms of grinding (Tr. 1088, 1129). He exhibited an antalgic gait (Tr. 1131). He was referred for a consultative examination by an orthopedic surgeon (Tr. 1135). The following month, Plaintiff reported continuing left knee pain and swelling, requesting that his left knee be drained (Tr. 1052). Treating records note "significant [bilateral] foot or ankle deformities" (Tr. 1059). Treating records state that he was already using a knee brace and cane (Tr. 1054). In May, 2016, Ephraim Zinberg, M.D. noted that Plaintiff was scheduled for right carpal tunnel release surgery for the following month and the same procedure on the left wrist in July, 2016 (Tr. 1189).

## 2. Non-Treating Records

In August, 2014, Moises Alviar, M.D. performed a consultative examination on behalf the SSA, noting Plaintiff's report of peripheral neuropathy, chronic headaches, and arthritis of the left knee and ankle (Tr. 723). Plaintiff reported that from October, 2012, he experienced swelling, pain, and weakness of the hands and feet (Tr. 723-724). Plaintiff reported periodic dizziness and balance problems as a result of a closed head injury (Tr. 724).

Plaintiff reported falls due to left ankle weakness (Tr. 724). Dr. Alviar observed a limited range of motion in the left knee and ankle with a normal gait (Tr. 726, 730).

In September, 2014, Ruqiya Tareen, M.D. performed a non-examining review of the treating and consultative records on behalf of the SSA, finding that Plaintiff could lift or carry 20 pounds occasionally and 10 frequently; sit, stand, or walk for a total of six hours in an eight-hour workday; and push and pull without limitation (Tr. 166). Dr. Tareen found that Plaintiff was limited to occasional climbing, stooping, kneeling, crouching, and crawling, and frequent balancing (Tr. 167). Dr. Tareen declined to find manipulative, visual, communicative, or environmental limitations (Tr. 167).

### C. Vocational Testimony

VE Harrison classified Plaintiff's former work as a baker's helper as semiskilled and exertionally medium[2] (Tr. 127). ALJ Tobin posed the following set of limitations to the VE describing a hypothetical individual of Plaintiff's age, education level, and work experience:

> Light [work] . . . . Occasionally climb ramps and stairs, occasionally climb
> ladders, ropes and scaffolds, frequently balance, occasionally stoop, kneel,

---

[2]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

crouch, and crawl.  Could this individual do the past work as a baker's helper? (Tr. 127).

The VE testified that the above limitations would preclude Plaintiff's past work but would allow for  the light, unskilled work of a small products assembler (150,000 positions in the national economy); packager (133,000); and laundry sorter (125,000) (Tr. 128).

The VE testified further that if the same individual were limited to occasional climbing, stooping, kneeling, crouching, and crawling; frequent balancing; a preclusion on exposure to moving mechanical parts, operation of a motor vehicle; and occasional exposure to humidity/wetness, airborne hazards, and temperature extremes, the job numbers would remain unchanged (Tr. 128-129).  The VE testified that an additional limitation to "simple and routine tasks" would likewise not change the job numbers (Tr. 129).  He testified that the need to be off task at least 20 percent of the workday would preclude all competitive employment (Tr. 129).  The VE stated that his testimony was consistent with information found in the *Dictionary of Occupational Titles* ("DOT"), except for the testimony regarding being off task, which was based on his professional experience (Tr. 130).  In response to questioning by Plaintiff's counsel, the VE testified that the need to use a cane and a limitation to occasional fingering and handling would eliminate all of the above-stated light jobs but would allow for the exertionally light work of a lobby attendant (35,000) and school bus monitor (50,000) (Tr. 132).  At the sedentary exertional level, the VE testified that such limitations would allow for the work of a surveillance monitor (Tr. 132).

### D.   The ALJ's Determination

Citing the medical transcript, ALJ Tobin found that Plaintiff experienced the severe impairments of "spine disorders; alcohol dependence; depression; Chronic Obstructive Pulmonary disease ("COPD"); ankle/foot disorder; [and] left knee osteoarthritis," but that none of the conditions met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 82).  The ALJ found that the conditions of closed head injuries, gastroesophageal reflux disease ("GERD"), hypertension, and CTS were non-severe (Tr. 82).

ALJ Tobin determined that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following additional restrictions:

> [O]ccasionally climb ramps and stairs, [] ropes and ladders; can frequently balance; and can occasionally stoop, kneel, crouch and crawl.  The claimant should never be exposed to unprotected heights, never work with moving mechanical parts, and never operate a motor vehicle.  The claimant is limited to occasional exposure to humidity and wetness, dust, odors, fumes and other pulmonary irritants, and extreme cold and heat.  The claimant is limited to simple, routine tasks (Tr. 83).

Citing the VE's testimony, the ALJ determined that Plaintiff could perform the light work of a small products assembler, hand packer, and laundry sorter (Tr. 88, 128).

The ALJ discounted Plaintiff's allegations of physical limitation, noting that July, 2014 studies of the left knee showed only "very mild" narrowing of the medial compartment (Tr. 84).  She cited Dr. Alviar's August, 2014 observation of a normal gait (Tr. 85).  She noted Plaintiff reported to a treating source in September, 2015 that he did "a lot of walking" (Tr. 85).

-10-

### III.   STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir.  1985).  Substantial evidence is more than a scintilla but less than a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)).  The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir.  1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight."  *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV.   FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

### ALJ's Failure to Assess the Physical Conditions at Step Three Requires Remand

Plaintiff, proceeding *pro se,* takes issue with the ALJ's Step Three findings. *Plaintiff's Brief,* 6-15, *Docket #16,* Pg ID 1261.  He notes that while the ALJ provided an adequate discussion of his psychological impairments, she failed to discuss why the physical conditions, in particular limitations related to the knee and ankle problems, did not meet or equal a listed impairment.  *Id.* (*citing* 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.02 (*Major dysfunction of a joint*(*s*)).

In response, Defendant does not dispute that the ALJ failed to state which listings she considered in analyzing the physical conditions or to provide any discussion of the same at

Step Three, but argues that the administrative determination as a whole supports the finding that none of the physical conditions met or medically equaled a listed impairment. *Defendant's Brief,* 5-16, *Docket #17,* Pg ID 1278 (*citing Lusk v. Comm'r of Loc. Sec.,* 106 F. App'x 405, 411 (6th Cir. August 6, 2004); *Harvey v. Comm'r of Soc. Sec.,* 2014 WL 5465531, at *5 (E.D. Mich. October 28, 2014)(Ludington, J.).   Defendant also argues that Plaintiff cannot meet all of the criteria required for a finding of disability at Step Three.   *Id.*

"Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.'" *Reynolds v. Commissioner of Social Security,* 424 Fed.Appx. 411, 414, 2011 WL 1228165, *2 (6th Cir. April 1, 2011)(citing 20 C.F.R. § 404.1525(a)).   At Step Three of the administrative sequence, "[a] Claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled [] and entitled to benefits."

Plaintiff argues that his knee condition required analysis at Step Three under Listing 1.02(A), which states:

> [G]ross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With: (A) Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b[.]

20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.02.   Listing 1.00B2b(1) gives examples

-13-

of "ineffective ambulation;"

> [E]xtreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning ... to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.
> § 1.00B2b(1).

At Step Three of her analysis, the ALJ stated that none of Plaintiff's severe impairments (previously listed as spine disorders, alcohol dependence, depression, COPD, anke/foot disorder, and left knee osteoarthritis) met or medically equaled a listed impairment (Tr. 82). However, the ALJ did not indicate which listings she considered in determining that none of the physical conditions were disabling at Step Three, nor did she provide a rationale for her finding that the physical conditions were not disabling. In contrast to her failure to explain the Listings with regard to Plaintiff's physical limitations, the ALJ cited Listings 12.04 and 12.09, relating to the diagnoses of *psychological conditions* of depression and substance abuse, and discussed why Plaintiff did not meet those Listings.

The ALJ's failure to state which listings she considered in finding that none of the physical conditions met or medically equaled a listed impairment warrants a remand. In *Reynolds,* similarly to the present case, "the ALJ found both a physical and mental impairment at Step Two" but failed to state which listings he used or why the physical conditions did not meet a listing. *Id.* at 415. The Court noted that "once [the ALJ] completed his analysis" of the psychological impairments, "he simply went on to the next step in the 5-step

analysis-determining residual functional capacity." *Id*. "No analysis whatsoever was done as to whether Reynolds' physical impairments . . . met or equaled a Listing under section 1.00." The Court found that the Step Three omission warranted a remand for further proceedings. *Id.* at 416 ("Put simply, [the ALJ] skipped an entire step of the necessary analysis. He was required to assess whether Reynolds met or equaled a Listed Impairment. . . but did not do so"). The present case differs from the *Reynolds* only to the extent that in *Reynolds,* the ALJ acknowledged that the applicable physical conditions were to be analyzed under the listings beginning at Listing 1.00, whereas here, the ALJ did not provide *any* listings for the physical conditions. If anything, the current omissions more strongly support the argument for remand than in *Reynolds.*

Defendants argument that the unexplained Step Three conclusion is supported by the later sections of the opinion is not well taken. Defendant cites *Lusk v. Commissioner of Social Sec.,* 106 Fed.Appx. 405, 411, 2004 WL 1791472, at *3 (6th Cir. August 6, 2004), for the proposition that the ALJ need only support the Step Three findings with substantial evidence. However in contrast to the present case in which the ALJ did not cite any listings for the physical conditions, the ALJ in *Lusk* appeared to have considered then rejected the claimant's contention that he met Listing 4.04 ("Ischemic Heart Disease"). *Id.* at 409 (claimant disputed "ALJ's *conclusion* that Lusk's coronary problems do not meet or equal Listing 4.04")(emphasis added). Similarly in *Harvey v. Commissioner of Social Sec,* 2014 WL 5465531 (E.D. Mich. October 28, 2014), where the claimant argued that he was disabled

under Listing 1.04, the ALJ did not provide a breakdown of his Step Three determination, but nonetheless stated that he had "considered listing 1.04 (disorders of the spine) and concluded that the claimant's back impairment does not meet this listing" *See Harvey,* Case No. 14-10614, *Docket #10-2* (Tr. 17). In contrast here, the ALJ did not provide *any* listing related to the physical conditions.

Further, the ALJ's later discussion of the medical records does not constitute an adequate substitute for the missing Step Three analysis. The ALJ cited Dr. Alviar's August, 2014 finding of a normal gait and a full range of motion (Tr. 85). However, subsequent treating records show that the left knee and ankle conditions appear to have deteriorated significantly in the first half of 2015 and continued through the date of the July, 2016 determination. Plaintiff was prescribed therapy as early as September, 2014 for the knee and ankle pain (Tr. 737). A July, 2015 imaging study showed a large joint effusion of the left knee with clinical observations of decreased Achilles and Patellar reflexes (Tr. 986, 1062, 1168, 1170). An MRI performed later the same year showed "severe" osteoarthritis of the left knee (Tr. 1176-1177). Plaintiff treated the knee and ankle pain with multiple modalities including medication, injections, padding, and strapping (Tr. 1063-1064).

To be sure, the ALJ cited the imaging studies showing that the knee condition was longstanding and severe (Tr. 85). She also cited a podiatrist's diagnoses of peripheral neuropathy, neuralgia, neuritis and radiculitis (Tr. 85). However, after citing the clinical observations and objective testing consistent with Plaintiff's report of long-term pain and

numbness, she concluded without explanation on the next page that "[t]he record does not demonstrate . . . neurological deficits or sensation loss associated with intense and disabling pain" (Tr. 86), even though the very records she cited on the previous page support Plaintiff's report of neurological deficits, numbness, and pain. In short, the remainder of the opinion cannot be interpreted to resolve the question of whether Plaintiff meets Listing 1.02.

Defendant's overlapping contention that Plaintiff cannot show that he meets every element of Listing 1.02(A) should also be rejected. Defendant argues that even assuming that Plaintiff's knee and ankle conditions meet the threshold criteria of Listing 1.02, he cannot show that he experiences "ineffective ambulation," which under Listing 1.00B2b(1) generally requires the use of "a hand-held assistive device(s)" limiting "the functioning of both upper extremities." *Defendant's Brief* at 10-11. Defendant cites *Forrest v. Commissioner of Social Sec.,* 591 Fed.Appx. 359, 366 (6th Cir. November 17, 2014) in support of the argument that the ALJ's failure to discuss Listing 1.02(A) was harmless error given that Plaintiff cannot establish that he was unable to ambulate effectively as defined by the Listings. *Defendant's Brief* at 12-13 (*citing Forrest* at 366 )("The record shows that Forrest used one cane at most, often went without, and could otherwise ambulate effectively during the relevant period").

Although Plaintiff indicated that he used a cane (requiring the use of only one hand) for walking, the present case is otherwise distinguishable from *Forrest.* While the Court in *Forrest* noted that the claimant used his cane sporadically, Plaintiff testified that he always required the use of a cane while walking (Tr. 101). Listing 1.00B2b(2) notes that "ineffective

-17-

ambulation" is not limited to "the inability to walk without the use of a walker, two crutches or two canes," but can include, for example, "the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." *Id.*  Listing 1.00B2b(1) notes logically that the need for a two-handed assistive device is not applicable to the instance where the claimant has "the use of only one upper extremity due to amputation of a hand." *Id.*

The fact that Plaintiff used a one rather than two-handed assistive device does not foreclose the reasonable possibility that his upper extremity limitations render him unable to ambulate effectively for purposes of Listing 1.02(A).  First, Plaintiff testified that both hands hurt and tingled constantly and that he required the use of wrist braces (Tr. 100).  The medical transcript shows that he used wrist braces from January, 2015 forward and that he treated the symptoms of CTS with hot and cold packs and exercise (Tr. 860, 939).  The  transcript also shows that in May, 2016, he was scheduled for right and left carpal tunnel release surgery in June and July, 2016 respectively (Tr. 1189).  Although Plaintiff's bilateral hand pain and inability to grip is not precisely equivalent to the amputation of a hand, it should be considered in determining whether Plaintiff's need for  a one-handed assistive device, along with his well-established limitations in gripping, renders him incapable of effective ambulation under Listing 1.02(A).  Because Plaintiff has demonstrated significant upper extremity limitations

not inconsistent with the examples used in 1.00B2b, *Forrest* is inapplicable.

Second, it cannot be concluded that the ALJ's finding that CTS was a non-severe impairment was based on all the relevant evidence (Tr. 82). While Exhibit 22F, cited above, states that Plaintiff was scheduled to undergo carpal tunnel release surgery in June and July, 2016, the ALJ erroneously stated that Exhibits 22F-24F refer to records concerning "treatment options for [the] left knee" (Tr. 85). While the ALJ cited Exhibits 2F, 3F, 13F, and 14F in support of her conclusion that a number of the impairments were non-severe, her administrative opinion contains no reference to the hand surgeries. The erroneous citation to Exhibit 22, coupled with an RFC containing no manipulative limitations, points to the conclusion that the ALJ did not consider timely evidence showing that Plaintiff experienced significant upper extremity limitations. Because the evidence easily establishes that the condition of CTS created more than minimal work-related limitations, the ALJ erred finding that the condition was non-severe. *See Anthony v. Astrue,* 266 Fed. Appx. 451, 457 (6th Cir. February 22, 2008)(*citing Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1998)("In the Sixth Circuit, the severity determination is 'a *de minimis* hurdle in the disability determination process.'"). As to the Step Three arguments raised by Plaintiff, the failure to note the wrist and hand limitations possibly affecting the ability to ambulate underscores the need for remand to consider whether he meets Listing 1.02(A).

While a remand to the administrative level is warranted for the above-discussed reasons, an award of benefits is premature. A remand for an award of benefits is appropriate

"only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Hum. Servs.,* 17 F.3d 171, 176 (6th Cir.1994). As such, I recommend a remand for further administrative proceedings consistent with this Report.

## VI.   CONCLUSION

For these reasons, I recommend that Plaintiff's Motion for Summary Judgment [Docket #16] be GRANTED to the extent that the case is remanded to the administrative level for further proceedings, and that Defendant's Motion for Summary Judgment [Docket #17] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 22, 2018                    s/R. Steven Whalen
                                           R. STEVEN WHALEN
                                           U.S. MAGISTRATE JUDGE

---

## CERTIFICATE OF SERVICE

I hereby certify on January 3, 2018 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to non-registered ECF participants on January 3, 2018.

                                           s/Carolyn M. Ciesla
                                           Case Manager for the
                                           Honorable R. Steven Whalen